# EXHIBIT A

## TERM SHEET

All persons identified in Exhibit B to the proposed Chapter 11 Plan of Reorganization for Otero County Hospital Association, Inc., some or all of whom have filed Proofs of Claim in the Gerald Champion Regional Medical Center ("GCRMC") Chapter 11 bankruptcy, and who are referred to here as the United Tort Claimants ("UTC"), hereby agree with Quorum Health Resources, LLC ("QHR"), CHS/Community Health Systems, Inc., Community Health Systems Professional Services Corporation, Triad Health Corporation, Community Health Systems, Inc. and all of their direct and indirect parents and subsidiaries and affiliates ("CHS Entities"), Nautilus Insurance Company ("Nautilus") and GCRMC to settle all claims among them on the following terms:

1. GCRMC, Nautilus and QHR will pay $21 million to the UTC, $8.45 million of which will be paid by Nautilus, $7.5 million of which will be paid by GCRMC, and $5.05 million of which will be paid by QHR. GCRMC may pay its contribution over three years. (Bankruptcy lawyers to agree on language re where the money is to be paid.) The term "Personal Injury Claims" shall mean, collectively, the UTC's bodily injury claims arising from surgeries performed by Frank Bryant and/or Christian Schlicht, claims of mismanagement however captioned, and any and all related or derivative claims.

2. QHR will request that its insurers Lexington Insurance Company ("Lexington") and Ironshore Insurance Company ("Ironshore") consent to transfer to the UTC QHR's rights to coverage under the policies arising from the Personal Claims.

3. Except as stated in this paragraph, QHR will make no representations about the ~~excess~~ policies issued by Lexington and Ironshore ("Policies"), and will not represent that there is or might be coverage under the Policies under any circumstances, and will not represent that all conditions to coverage have been or might be satisfied. However, QHR will represent that:

    a. It has paid all premiums for the Policies.

    b. To the best of QHR's knowledge, the limits of the Policies have not been eroded by any other claim as of this date.

    c. QHR has taken the position with Lexington and Ironshore that all applicable self-insured retentions have been satisfied with respect to the Personal Injury Claims.

    d. QHR received a November 2, 2011 letter from Nautilus concerning payment of its limits, which QHR will produce to the UTC upon Nautilus' consent.

    e. On October 7, 2011, the UTC made an oral settlement demand upon QHR to settle the Personal Injury Claims for the limits of the Nautilus policies and the Lexington/Ironshore Policies, and QHR received a letter from the UTC dated October 27, 2011 stating this demand. QHR demanded that Lexington and Ironshore pay this demand. Lexington and Ironshore refused.

    f. QHR received a February 15, 2012 letter from the UTC demanding to settle the Personal Injury Claims for the limits of the Nautilus policies and the Lexington/Ironshore Policies. QHR demanded that Lexington and Ironshore pay this demand. Lexington and Ironshore refused.

1

*(handwritten left margin, vertical: "from par fas other than GCRMC")*

4. ~~1.~~ QHR will agree not to oppose the UTC's motion to intervene in *CHS/Community Health Systems, Inc.; Triad Healthcare Corporation v. Lexington Insurance Company; Ironshore Insurance Company*, U.S.D.C. for the M.D. Tn. No. 3-11-0449, consolidated with *Quorum Health Resources, LLC v. Lexington Insurance Company; Ironshore Insurance Company*, U.S.D.C. for the M.D. Tn. No. 3-12-0248 (collectively, "the Coverage Action").

5. ~~2.~~ The UTC will release GCRMC, Schlicht and Nautilus for all of the Personal Injury Claims at the times full payments are made by each.

6. ~~3.~~ The UTC will agree to consolidate all of the Personal Injury Claims for discovery, pre-trial litigation and trial in a single forum. QHR will defend the Personal Injury Claims on their merits.

7. ~~4.~~ Once Nautilus pays its policy limits under this settlement, Nautilus policy limits will be deemed exhausted, its duty to defend shall end, and QHR will tender its defense of the Personal Injury Claims to Lexington and Ironshore. QHR's defense costs will erode the limits of the Policies.

8. ~~5.~~ The UTC will agree that, should any of the UTC recover a judgment against QHR on any of the Personal Injury Claims, the UTC will enforce all such judgments against the available insurance only, and not against the assets of QHR. The UTC will give QHR a release of all claims, however captioned, for liability on the Personal Injury Claims in excess of QHR's insurance.

9. ~~6.~~ QHR and GCRMC will give each other general releases of all claims. GCRMC, QHR, Schlicht and other Nautilus insureds shall provide it unconditional policy releases upon Nautilus' payment hereunder. *on the terms and conditions set forth*

10. ~~7.~~ The $7.5 million payable by GCRMC herein will be paid into a litigation trust established by the debtor's proposed plan of reorganization ~~upon the effective date of the plan~~. The remaining payments shall be made within 15 days after the entry of any final nonappealable order by the Bankruptcy Court that grants QHR a full and final release of all claims by GCRMC against QHR. *dismissal* *persuant to of this Term sheet.*

11. ~~8.~~ All CHS Entities are ~~dismaid~~ *dismissed* with prejudice. Any litigation involving Nautilus shall also be dismissed with prejudice.

12. ~~9.~~ The parties will enter into a more complete agreement documenting this settlement, including national database reporting issues and liabilities for Medicare/liens.

~~10.~~ GCRMC agrees to file an amended Plan and Disclosure Statement by May 23, 2012. GCRMC shall use its best efforts to obtain approval of the Disclosure Statement by June 30, 2012 and confirmation and effective date of the corresponding Plan by July 31, 2012.

The foregoing is contingent upon: *and effectiveness of the*

1. Approval of the Bankruptcy Court and confirmation/*and effectiveness* of the GCRMC Plan of Reorganization.

2

2. The UTC's counsel warrant that they do not currently represent or know of any other claimant or plaintiff with claims in any way relating to the Personal Injury Claims who is not part of the UTC.

3. Lexington's agreement to defend QHR against the Personal Injury Claims under a full reservation of rights once Nautilus makes its payment under this Term Sheet, without waiver of defenses it has raised in the Coverage Action. If Lexington does not so agree by 5:00 p.m. on May 17, 2012, this Term Sheet shall be null and void.

SO AGREED, ON MAY 16, 2012

| United Tort Claimants: | Nautilus Insurance Company |
|---|---|
| Barney Gwen | Todd Hampton |
| Greig Coates | Lewis Brisbois Bisgaard & Smith |
| Michael Volk | George J. Manos |
| Victor Poulos | |
| Felicia Weingartner | |
| Denise Torres | |
| Lisa Curtis | |
| ANDERSON KILL WOOD & BENDER | Gerald Champion Regional Medical Center |
| David E. Wood | John Wheeler  Craig Averch |
| Counsel for Quorum Health Resources, LLC | Counsel for Gerald Champion Regional Medical Center |
| CHS Entities | |
| William Madison | |
| Counsel for CHS Entities | |

3

## WAIVER OF DEFENSE CONDITION
## TO MAY 16, 2012 TERM SHEET

On May 16, 2012, Quorum Health Resources, LLC ("QHR"), all persons identified in Exhibit B to the proposed Chapter 11 Plan of Reorganization for Otero County Hospital Association, Inc. filed on May 7, 2012 in the United States Bankruptcy Court for the District of New Mexico, some or all of whom have filed Proofs of Claim in the Gerald Champion Regional Medical Center ("GCRMC") Chapter 11 bankruptcy, and who are referred to here as the United Tort Claimants ("UTC"), CHS/Community Health Systems, Inc., Community Health Systems Professional Services Corporation, Triad Health Corporation, Community Health Systems, Inc. and all of their direct and indirect parents and subsidiaries and affiliates ("CHS Entities"), Nautilus Insurance Company and GCRMC entered into a Term Sheet in a Rule 16 conference before Hon. Alan Torgerson.

1. The Term Sheet was subject to the following Condition No. 3:

> Lexington's agreement to defend QHR against the Personal Injury Claims under a full reservation of rights once Nautilus makes its payment under this Term Sheet, without waiver of defenses it has raised in the Coverage Action. If Lexington does not so agree by 5:00 p.m. on May 17, 2012, this Term Sheet shall be null and void.

The parties to the Term Sheet agree that this condition has been removed.

2. The Term Sheet included the following covenant:

> The UTC will agree to consolidate all of the Personal Injury Claims for discovery, pre-trial litigation and trial in a single forum. QHR will defend the Personal Injury Claims on their merits.

The parties to the Term Sheet agree that this covenant is deleted from the Term Sheet.

| United Tort Claimants: | Nautilus Insurance Company |
|---|---|
| Jeanne Wanlass | Todd Hampton 5/30/12 |
| Greg Coates | |
| Michael Volk | |
| Felicia Weingartner | |

|  |  |
|---|---|
| Denise Torres<br><br>Lisa Curtis | |
| ANDERSON KILL WOOD & BENDER<br><br>David E. Wood<br>Counsel for Quorum Health Resources, LLC | Gerald Champion Regional Medical Center<br><br>John Wheeler<br>Counsel for Gerald Champion Regional Medical Center |
| CHS Entities<br><br>William Madison<br>Counsel for CHS Entities | |

2

## WAIVER OF DEFENSE CONDITION
## TO MAY 16, 2012 TERM SHEET

On May 16, 2012, Quorum Health Resources, LLC ("QHR"), all persons identified in Exhibit B to the proposed Chapter 11 Plan of Reorganization for Otero County Hospital Association, Inc. filed on May 7, 2012 in the United States Bankruptcy Court for the District of New Mexico, some or all of whom have filed Proofs of Claim in the Gerald Champion Regional Medical Center ("GCRMC") Chapter 11 bankruptcy, and who are referred to here as the United Tort Claimants ("UTC"), CHS/Community Health Systems, Inc., Community Health Systems Professional Services Corporation, Triad Health Corporation, Community Health Systems, Inc. and all of their direct and indirect parents and subsidiaries and affiliates ("CHS Entitles"), Nautilus Insurance Company and GCRMC entered into a Term Sheet in a Rule 16 conference before Hon. Alan Torgerson.

1. The Term Sheet was subject to the following Condition No. 3:

> Lexington's agreement to defend QHR against the Personal Injury Claims under a full reservation of rights once Nautilus makes its payment under this Term Sheet, without waiver of defenses it has raised in the Coverage Action. If Lexington does not so agree by 5:00 p.m. on May 17, 2012, this Term Sheet shall be null and void.

The parties to the Term Sheet agree that this condition has been removed.

2. The Term Sheet included the following covenant:

> The UTC will agree to consolidate all of the Personal Injury Claims for discovery, pre-trial litigation and trial in a single forum. QHR will defend the Personal Injury Claims on their merits.

The parties to the Term Sheet agree that this covenant is deleted from the Term Sheet.

| United Tort Claimants: | Nautilus Insurance Company |
|---|---|
| Jeanne Wanlass | Todd Hampton     5/30/12 |
| Greg Coates | |
| Michael Volk | |
| Felicia Weingartner | |

1

|  |  |
|---|---|
| Denise Torres | |
| Lisa Curtis | |
| ANDERSON KILL WOOD & BENDER<br><br>vid  Wood<br>unsel    Quorum Health Resources, LLC | Gerald Champion Regional Medical Center<br><br>John Wheeler<br>Counsel for Gerald Champion Regional Medical<br>Center |
| CHS Entities<br><br>William Madison<br>Counsel for CHS Entities | |

2

## <u>SETTLEMENT AGREEMENT</u>

This SETTLEMENT AGREEMENT (the "Settlement Agreement") is made and entered into on the date the last signature is affixed hereto, by and among, (1) plaintiffs and claimants in a series of claims and lawsuits identified in Exhibit A hereto (individually and collectively referred to as the "United Tort Claimants" or "UTC"); (2) Quorum Health Resources LLC ("QHR"); (3) CHS/Community Health Systems, Inc. ("CHS/"); (4) Triad Healthcare Corporation ("Triad"); (5) Community Health Systems Professional Service Corporation ("CHSPSC"); (6) Otero County Hospital Association, Inc., d/b/a Gerald Champion Regional Medical Center, d/b/a Mountain View Catering, ("Debtor"); (7) Nautilus Insurance Company ("Nautilus"); and (8) Christian Schlicht, D.O. ("Schlicht"). Where applicable, the United Tort Claimants, QHR, CHS/, Triad, CHSPSC, the Debtor, Nautilus and Schlicht shall be collectively referred to herein as the "Parties" and individually referred to as a "Party."

WHEREAS, the Debtor filed its Third Amended Chapter 11 Plan of Reorganization dated June 20, 2012 for Otero County Hospital Association (as amended by the Non-Material Modification to resolve the East Claim, the "Plan"), which was confirmed by the United States Bankruptcy Court for the District of New Mexico (the "Bankruptcy Court") on August 7, 2012 through the entry of an order confirming the plan (the "Confirmation Order"). The Confirmation Order approves the settlement described herein;

WHEREAS, the Parties' settlement described in this Settlement Agreement shall be effective upon and concurrently with the occurrence of the effective date of the Plan (the "Effective Date");

WHEREAS, the United Tort Claimants have initiated the claims and lawsuits identified in Exhibit A hereto (which, along with any and all claims, demands, suits, obligations, costs, judgments, demands, rights, liabilities, actions and causes of action of any nature, known or unknown, discovered and undiscovered, suspected or unsuspected, fixed or contingent at law or in equity arising out of, related to, or in any way directly or indirectly involving them, including claims and lawsuits arising out of, related to, or in any way directly or indirectly involving their subject matter, are referred to collectively as the "Personal Injury Claims") against, in various combinations, the Debtor, QHR, CHS/, Triad, CHSPSC, Schlicht and Frank T. Bryant, MD;

WHEREAS, the Personal Injury Claims make certain allegations about a series of procedures performed at the Debtor's facilities between 2006 and 2009, in connection with which QHR is charged with mismanagement on the basis of its role as the Debtor's management company;

WHEREAS, on August 16, 2011, the Debtor filed a voluntary petition for relief under chapter 11, title 11 of the United States Code (11 U.S.C. §§ 101-1532) in the Bankruptcy Court, in proceedings captioned *In re Otero County Hospital*

nydocs1-.
Case 18-01028-j    Doc 1-1    Filed 05/17/18    Entered 05/17/18 14:43:39 Page 9 of 79

*Association, Inc.*, Chapter 11 Case No. 11-11-13686-JA (the "Bankruptcy Case") in which each of the UTC asserts the Personal Injury Claims as unsecured claims.

WHEREAS, Nautilus issued insurance policies captioned Healthcare Professional Liability Insurance Policy No. PFP_1000034_P-3, effective from April 9, 2010 to April 9, 2011, and Healthcare Excess Liability Insurance Policy No. CFX_1000010_P-3, effective from April 9, 2010 to April 9, 2011 (collectively referred to as "Nautilus Policies") insuring certain liabilities of the Debtor, QHR, CHS/, CHSPSC and Schlicht;

WHEREAS, Nautilus has been defending the Debtor, QHR, CHS/, CHSPSC and Schlicht against the Personal Injury Claims under a full and complete reservation of rights;

WHEREAS, on February 23, 2011, Nautilus filed a lawsuit in the District of New Mexico against the Debtor, QHR, CHS/, CHSPSC and Schlicht seeking to rescind the Policies ("Rescission Action");

WHEREAS, on January 10, 2012, the Debtor filed an adversary proceeding against Nautilus in the Bankruptcy Court, seeking declaratory relief and monetary damages for: (i) Nautilus' alleged breach of contract; (ii) Nautilus' alleged bad faith refusal to pay for the Debtor's defense costs; (iii) Nautilus' alleged negligence in handling the Debtor's demand for coverage; and (iv) Nautilus' alleged use of unfair and deceptive trade practices; and declaratory judgment to establish: (a) that Nautilus had a duty to defend the Debtor against the Personal Injury Claims; (b) that Nautilus had a duty to fund the cost of estimation of the Personal Injury Claims ("Coverage Action");

WHEREAS, the Bankruptcy Court previously ordered the Parties to attend a mediation session on May 16, 2012 pursuant to a request by the Debtor and certain other parties;

WHEREAS, on May 16, 2012 and May 30, 2012, the Parties attended all day mediation sessions and agreed to the global settlement described herein as set forth on the attached Term Sheet and Waiver of Defense Condition to May 16, 2012 Term Sheet;

WHEREAS the Term Sheet and Waiver of Defense Condition were incorporated into the Plan;

WHEREAS the Confirmation Order also incorporated the Term Sheet and Waiver of Defense Condition and approved the settlement set forth herein and therein;

WHEREAS, the UTC and QHR wish to resolve all claims the UTC has or could have alleged against QHR to the extent provided herein, whether discovered or undiscovered, known or unknown, on any theory, including fraud and intentional tort claims, mismanagement claims, tort claims and theories of action of any kind in any and

all amounts, but only to the extent any such claims are in excess of any and all available insurance policies, including but not limited to the combined applicable policy limits of Healthcare Professional Services Liability – Claims Made and Umbrella Liability – Claims Made Policy No. 6801409 issued by Lexington Insurance Company ("Lexington") to QHR and other insureds as enumerated or defined by the policy or otherwise deemed as such ("Lexington Policy"), and Follow Form Excess Policy No. IH-HP079A issued by Ironshore Insurance Company ("Ironshore") to QHR and other insureds as enumerated or defined by the policy or otherwise deemed as such ("Ironshore Policy") and any other insurance policies Lexington or Ironshore has issued to QHR (which, with the Lexington Policy and the Ironshore Policy, are collectively referred to as the "Lexington/Ironshore Policies");

WHEREAS, it is understood that the UTC will continue the Unreleased Claims Against QHR (as defined herein) and that the releases set forth herein apply only to QHR's liability on the Personal Injury Claims in excess of QHR's insurance;

WHEREAS, the Debtor and QHR wish to resolve all claims they have or could have alleged against each other, discovered or undiscovered, known or unknown, on any theory as more particularly described in the Plan,

WHEREAS, the UTC wish to resolve all claims they have or could have alleged against the Debtor and Schlicht arising directly or indirectly from the Personal Injury Claims, discovered or undiscovered, known or unknown, on any theory as more particularly described in the Plan;

WHEREAS, the UTC, QHR, the Debtor and Schlicht wish to resolve all claims they have or could have alleged against Nautilus arising directly or indirectly from the Personal Injury Claims, discovered or undiscovered as an insurer, known or unknown, on any theory, including all claims under and arising from the Nautilus Policies in a manner consistent with the Plan and Confirmation Order;

WHEREAS, the UTC wish to resolve all claims they have or could have alleged against CHS/, Triad and CHSPSC arising directly or indirectly from the Personal Injury Claims, discovered or undiscovered, known or unknown, on any theory, including fraud and intentional tort claims, mismanagement claims, tort claims and theories of action of any kind;

WHEREAS, Nautilus wishes to resolve all claims it has or could have alleged against QHR, the Debtor (except as otherwise set forth in the Plan and Confirmation Order), Schlicht and the UTC arising directly or indirectly from the Personal Injury Claims, discovered or undiscovered, known or unknown, on any theory;

WHEREAS, the Debtor and Schlicht wish to resolve all claims they have or could have alleged against each other arising directly or indirectly from the Personal Injury Claims, discovered or undiscovered, known or unknown, on any theory;

WHEREAS, the Parties wish to resolve the disputes described above, and to the extent described above not because they concede the accuracy of the allegations made by any Party against any other Party or admit any liability, but rather to buy their peace and avoid the expense of litigation; and

NOW THEREFORE, in consideration for all of the promises set forth herein, which the Parties agree is good and valuable consideration supporting all such promises, the Parties hereby agree as follows:

## A.    Settlement Payments.

1.    On the Effective Date QHR and Nautilus shall make payments to the UTC in the following amounts:

Nautilus shall pay the sum of $8.45 million ("Nautilus Payment") into a bank account established by the UTC's counsel for the benefit of all of the United Tort Claimants ("UTC Account").  QHR and the UTC agree that, of this sum, Nautilus shall pay $6 million toward settlement with the UTC solely on behalf of QHR, and QHR and UTC further agree that said amount is intended to satisfy any SIR or SIRs applicable to QHR's excess coverages.  Nautilus shall make the Nautilus Payment by initiating a wire transfer on or before the Effective Date according to the following instructions provided by counsel for the UTC:

|  |  |
|---|---|
| Accountholder: | Urbielewicz & Murphree, CPAs |
| Bank Name: | Wells Fargo Bank, N.A. |
| Federal Id No.: | 85-0450765 |
| Bank Account No.: | 8022705670 |
| ABA Routing No.: | 121000248 |

(Collectively, "the Wire Instructions.")

a.    QHR shall pay the sum of $5.05 million ("QHR Payment") into the UTC Account.  QHR shall make this payment by initiating a wire transfer on or before the Effective Date according to the Wire Instructions.

b.    Neither Nautilus nor QHR shall have any responsibility for allocating or distributing the Nautilus Payment or QHR Payment among the United Tort Claimants and the UTC's counsel, and the releases as described herein by and obligations of the United Tort Claimants being made with respect to Nautilus and QHR shall be effective upon the Nautilus-QHR Payment regardless of how the Nautilus-QHR Payments are remitted to any of the United Tort Claimants and/or his or her lawyers.

2.    The Debtor shall make payments when and as required by the Plan.

**B.** **Insurance.**

1.      The Parties acknowledge and agree that QHR has asked Lexington and Ironshore to consent to a transfer to the United Tort Claimants of QHR's rights under the Lexington/Ironshore Policies arising from the Personal Injury Claims.

2.      The Parties acknowledge and agree that QHR and its present or former employees, agents, representatives, general partners, limited partners, divisions, parents, subsidiaries, related entities, principals, third party administrators, affiliates, receivers, insurers, reinsurers, heirs, executors, associates, directors, officers, attorneys, trustees, assigns, predecessors and successors, and related entities have not made, do not make and may not be construed as having made or making any representation about the Lexington/Ironshore Policies or whether, to what extent or under what circumstances coverage may exist under the Lexington/Ironshore Policies with the exception of the representations expressly enumerated in paragraph 3 of the Term Sheet.

**C.** **Releases And Dismissals.**

1.      On the Effective Date, the United Tort Claimants, the Debtor, QHR, Nautilus and Schlicht on the one hand, and CHS/, Triad and CHSPSC on the other hand, and their respective present or former employees, agents, representatives, general partners, limited partners, divisions, parents, subsidiaries, business units, related entities, principals, third party administrators, affiliates, receivers, insurers, reinsurers, heirs, executors, associates, directors, officers, attorneys, trustees, assigns, predecessors and successors,  shall fully, finally and forever settle, release, discharge and acquit each other, from any and all claims, demands, suits, obligations, damages, sums of money, debts, expenses, costs, judgments, demands, rights, liabilities, actions and causes of action of any nature, known or unknown, asserted or unasserted, accrued or unaccrued, discovered and undiscovered, suspected or unsuspected, fixed or contingent at law or in equity, based upon, arising out of, related to, or in any way involving (directly or indirectly) the Personal Injury Claims on any theory, with the express exception of all rights and obligations arising out of this Settlement Agreement, the Plan or the Confirmation Order.  The Parties acknowledge and agree that, in the event of any conflict between this paragraph and Paragraph C3 below, the provisions of Paragraph C3 shall prevail.

2.      On the Effective Date, the Debtor, QHR and Schlicht on the one hand, and Nautilus on the other hand, and their respective present or former employees, agents, representatives, general partners, limited partners, divisions, parents, subsidiaries, business units, related entities, principals, third party administrators, affiliates, receivers, insurers, reinsurers, heirs, executors, associates, directors, officers, attorneys, trustees, assigns, predecessors and successors, related entities shall fully, finally and forever settle, release, discharge and acquit each other from any and all claims, demands, suits, obligations, costs, judgments, demands, rights, liabilities, actions and causes of action of any nature, known or unknown, discovered and undiscovered, suspected or

nydocs1-.

unsuspected, fixed or contingent at law or in equity, based upon, arising out of, related to, or in any way involving (directly or indirectly) the Personal Injury Claims as they pertain to any right, claim or obligation of Nautilus (including any and all obligations of any nature or kind having anything to do with the Nautilus Policies), with the express exception of all rights and obligations arising out of this Settlement Agreement, the Plan or Confirmation Order, including any limitations on the Debtor's release of Nautilus set forth in the Confirmation Order. The Parties expressly acknowledge and agree that the Nautilus Payment, once made and received, will fully and completely exhaust the limits of the Nautilus Policies and that all of Nautilus' rights and duties under the Nautilus policies, including but not limited to its duty to defend the Debtor, QHR or Schlicht or any other person or entity against the Personal Injury Claims, shall end on the date the Nautilus Payment has been made and received by the UTC. The Parties acknowledge and agree that, in the event of any conflict between this paragraph and Paragraph C3 below, the provisions of Paragraph C3 shall prevail.

3.      On the Effective Date, the UTC and their respective present or former employees, agents, representatives, general partners, limited partners, divisions, parents, subsidiaries, business units, related entities, principals, third party administrators, affiliates, receivers, insurers, reinsurers, heirs, executors, associates, directors, officers, attorneys, trustees, assigns, predecessors and successors shall fully, finally and forever settle, release, discharge and acquit QHR and its respective present or former employees, agents, representatives, general partners, limited partners, divisions, parents, subsidiaries, business units, related entities, principals, third party administrators, affiliates, receivers, heirs, executors, associates, directors, officers, attorneys, trustees, assigns, predecessors and successors from that portion of any and all claims, demands, suits, obligations, damages, sums of money, debts, expenses, costs, judgments, settlements, demand rights, liabilities, actions and causes of action of any nature, known or unknown, discovered or undiscovered, suspected or unsuspected, fixed or contingent at law or in equity, arising out of, related to, or in any way directly or indirectly involving the Personal Injury Claims or the subject matter of the Personal Injury Claims on any theory in excess of QHR's insurance. The Parties expressly acknowledge and agree that that portion of any and all claims, demands, suits, obligations, damages, sums of money, debts, expenses, costs, judgments, settlements, demand rights, liabilities, actions and causes of action against QHR or its respective present or former employees, agents, representatives, general partners, limited partners, divisions, parents, subsidiaries, business units, related entities, principals, third party administrators, affiliates, receivers, heirs, executors, associates, directors, officers, attorneys, trustees, assigns, predecessors and successors within QHR's insurance are not released by anything in this paragraph (the "Unreleased Claims Against QHR"). The Parties further acknowledge and agree that nothing in this paragraph constitutes a release of any rights and obligations arising out of this Settlement Agreement.

4.      The UTC and their respective present or former employees, agents, representatives, general partners, limited partners, divisions, parents, subsidiaries, business units, related entities, principals, third party administrators, affiliates, receivers,

insurers, reinsurers, heirs, executors, associates, directors, officers, attorneys, assigns, predecessors, and successors agree that should any of the UTC recover a judgment or judgments against QHR on any of the Unreleased Claims Against QHR, the UTC will enforce any and all such judgments against the available insurance only, and not against the assets of QHR or its respective present or former employees, agents, representatives, general partners, limited partners, divisions, parents, subsidiaries, business units, related entities, principals, third party administrators, affiliates, receivers, heirs, executors, associates, directors, officers, attorneys, trustees, assigns, predecessors and successors.

5.      On the Effective Date, the Debtor and QHR shall grant each other the releases set forth in the Plan.

6.      On the Effective Date, the United Tort Claimants shall grant the Debtor the releases set forth in the Plan.

7.      On the Effective Date, the UTC and their respective present or former employees, agents, representatives, general partners, limited partners, divisions, parents, subsidiaries, business units, related entities, principals, third party administrators, affiliates, receivers, insurers, reinsurers, heirs, executors, associates, directors, officers, attorneys, trustees, assigns, predecessors and successors, related entities shall fully, finally and forever settle, release, discharge and acquit Schlicht and Schlicht's present or former employees, agents, representatives, general partners, limited partners, divisions, parents, subsidiaries, business units, related entities, principals, third party administrators, affiliates, receivers, insurers, reinsurers, heirs, executors, associates, directors, officers, attorneys, trustees, assigns, predecessors and successors, related entities from any and all claims, demands, suits, obligations, costs, judgments, demands, rights, liabilities, actions and causes of action of any nature, known or unknown, discovered and undiscovered, suspected or unsuspected, fixed or contingent at law or in equity based upon, arising out of, related to, or in any way involving (directly or indirectly) the Personal Injury Claims, with the express exception of all rights and obligations arising out of this Settlement Agreement.   The Parties acknowledge and agree that, in the event of any conflict between this paragraph and Paragraph C3 above, the provisions of Paragraph C3 shall prevail.

8.      Nothing in this Section C, including any of the releases granted herein, shall in any way limit, impair, modify, lessen or alter any provision of the Plan, Confirmation Order or any Plan Document (as defined in the Plan), including, without limitation, the Personal Injury Trust Declaration and Personal Injury Trust Note, each of which shall be unaffected by the releases set forth herein and, once the Effective Date occurs, shall govern the rights of the parties and be fully binding on all of the parties hereto and enforceable according to their respective terms.  Without limiting the generality of the foregoing, nothing in this Section C shall limit the Debtor's discharge under the Plan, Confirmation Order or Bankruptcy Code.  It is expressly acknowledged and agreed that no party may use this Settlement Agreement as a defense against or

excuse not to perform any rights or obligations such party may have under the Plan, the Confirmation Order or the Plan Documents.

## D.    Claims Against QHR.

1.      It is understood and agreed that litigation of the Unreleased Claims Against QHR shall continue after any releases or payments described in this Settlement Agreement  to resolution on their merits.  QHR shall defend the Unreleased Claims Against QHR and shall continue in good faith and diligently to assert its claims that Lexington and/or Ironshore is obligated under the Lexington/Ironshore Policies to defend the Unreleased Claims Against QHR after any releases or payments described in this Settlement Agreement; and

2.      Within ten days after the Effective Date, the UTC shall dismiss all Personal Injury Claims against CHS/, Triad, CHSPSC and Schlicht with prejudice, reserving all claims against QHR.

3.      Within ten days after the Effective Date, the UTC shall dismiss all Personal Injury Claims against the Debtor with prejudice as described in the Plan.

4.      Within ten days after the Effective Date Nautilus shall dismiss the Rescission Action with prejudice in its entirety.

## E.    Representations And Warranties.

1.      The UTC represent as evidenced by their counsel's signatures below, that they have sought and obtained the advice of legal counsel of their choice concerning all terms and conditions of this Settlement Agreement, and that they have been represented by this legal counsel throughout all negotiations, preparation, review and execution of this Settlement Agreement, and in particular the terms and conditions respecting insurance coverage.

2.      The UTC represent and warrant that they are not relying upon any statement of fact or assurance by QHR in entering into this Settlement Agreement, save only the factual statements made in paragraph 3 of the Term Sheet.

3.      Each lawyer representing any of the United Tort Claimants warrants that he or she does not currently represent any other claimant or plaintiff with claims in any way relating to the Personal Injury Claims and Unreleased Claims Against QHR who is not part of the United Tort Claimants, and does not know of any such claimant or plaintiff.

4.      The UTC, by and through their legal counsel, represent that they have the exclusive right to prosecute every claim asserted in the Personal Injury Claims and Unreleased Claims Against QHR, with the sole exception of the East Claim referred to herein, and that each of the undersigned legal counsel for the UTC has the actual

Page 8 of 143

authority to enter into this Settlement Agreement, to provide the releases contained herein, and to bind the UTC to the resolution of the Personal Injury Claims and Unreleased Claims Against QHR contained and set forth herein.

5.    QHR represents and warrants that it has the exclusive right to prosecute claims for indemnification against the Debtor which are released hereunder, and that its signatory set forth below has the actual authority to enter into this Settlement Agreement on QHR's behalf.

6.    QHR, CHS/, Triad, CHSPSC, the Debtor, and Schlicht represent and warrant that they have the exclusive right to prosecute their respective claims against Nautilus related to the  Personal Injury Claims and Unreleased Claims Against QHR, and that they have the actual authority to enter into this Settlement Agreement.

**F.    <u>Liens and Related Matters</u>.**

1.    As part of the consideration for the payments set forth in Section A of this Settlement Agreement, the UTC agree to and do hereby indemnify, defend and hold harmless QHR, the Debtor, CHS/, CHSPSC, Triad, Nautilus and Schlicht, collectively and individually, from any and all liens (including but not limited to workers' compensation liens, Medicare liens, Medicaid liens, Public Aid liens, health care provider liens, physician liens, hospital liens, therapists' liens, chiropractors' liens, insurance liens or attorney liens), expenses, penalties, fees, costs, damages and liability of any kind as a result of, arising out of, related to or connected with any claims, demands, actions, judgments, conditional payments and causes of action of whatever nature or character which have been asserted or may be asserted by (1) the UTC, (2) any person, firm, corporation or business entity on behalf of, through or under the UTC or (3) anyone claiming to be related to the UTC and entitled to recover in any manner as a result of, arising out of, related to or connected with the alleged wrongful conduct or injuries asserted in the Personal Injury Claims or Unreleased Claims Against QHR (the "Lien Matters").

2.    The UTC hereby warrant and represent that all Medicaid, Medicare, Debtor, doctor, medical and workers' compensation liens, if any, incurred in connection with the injuries alleged in the Personal Injury Claims or Unreleased Claims Against QHR have been or will be satisfied by the UTC, and that all individual members of the UTC who are Medicare beneficiaries will comply with all applicable reporting guidelines provided by the Centers for Medicare and Medicaid Services ("CMS").  The UTC agree to furnish, upon timely request, written proof to counsel for QHR, the Debtor, CHS/, CHSPSC, Triad, Nautilus or Schlicht that all such liens have been fully resolved or that no such liens exist.

3.    For avoidance of doubt, the Lien Matters, to the extent asserted against the Debtor, constitute Class 8 – Non-QHR Reimbursement, Contribution and Indemnity Claims payable solely from the Personal Injury Trust as provided in Section 7.2(c) of the Plan.

4.     For purposes of clarification only, the Parties expressly acknowledge that QHR, the Debtor, CHS/, CHSPSC, Triad, Nautilus and Schlicht, collectively and individually, shall never have to pay any money or other consideration to the UTC, and each of them, in connection with the Personal Injury Claims beyond what shall be paid pursuant to Section A of this Settlement Agreement.  The Parties acknowledge and agree that, for purposes of this paragraph, "QHR" does not refer to QHR's insurers. The Parties further agree that nothing in this paragraph modifies or shall be construed as modifying in any way anything in this Settlement Agreement.

5.     Based on UTC's representations in this Section F, and, with respect to the Debtor, the Plan and Confirmation Order, QHR, the Debtor, CHS/, CHSPSC, Triad, Nautilus and Schlicht will not include CMS, Medicare or Medicaid as payee(s) on any settlement proceeds.

6.     It is also the express intention of the Parties that foregoing provisions in this Section F shall survive the execution and completion of other obligations in this Settlement Agreement, and shall not require any additional payment or consideration as a condition precedent to its effectiveness.

## G.     __Indemnification__.

1.     QHR hereby agrees to defend, indemnify and hold harmless Nautilus and its present or former employees, agents, representatives, general partners, limited partners, divisions, parents, subsidiaries, business units, related entities, principals, third party administrators, affiliates, receivers, insurers, reinsurers, heirs, executors, associates, upstream entities, downstream entities, directors, officers, attorneys, trustees, assigns, predecessors and successors,  entities from and against any loss or liability on account of any and all Personal Injury Claims and Unreleased Claims Against QHR pursued by any person or entity with respect to the Nautilus Policies, with the express exception that QHR shall have no such obligations with respect to matters addressed in Section F of this Settlement Agreement.

## H.     __Other Provisions__.

1.     The Parties agree to cooperate in good faith to effectuate all the terms and conditions in this Settlement Agreement and to perform the terms specified herein.

2.     In the event that a dispute, controversy or claim arises in connection with this Settlement Agreement or the claims released in this Settlement Agreement, and any Party institutes any litigation or other proceeding, the prevailing Party in any such litigation or proceeding shall be entitled to recover his, her or its attorneys' fees and costs except that this provision shall not apply to the Debtor.  All Parties acknowledge and agree that they collectively participated in the negotiation and preparation of this Settlement Agreement.  There shall not be a presumption or construction against any signatory hereto, each signatory expressly waiving the doctrine of *contra proferentem*.

nydocs1-.

3.     Each of the Parties acknowledges that he, she or it has entered into this Settlement Agreement voluntarily.  Each of the attorneys executing this Settlement Agreement acknowledges that he or she is empowered to so act.

4.     Other than the terms set forth herein, the Parties deny that any representations, whether oral or written, were made to induce him or them to enter into this Settlement Agreement.

5.     This Settlement Agreement may be executed in any number of counterparts by the Parties, and when each Party has signed and delivered at least one such counterpart to the other Party, each counterpart shall be deemed an original and taken together shall constitute one and the same Settlement Agreement that shall be binding and effective as to all Parties.

6.     The validity, interpretation and legal effect of this Settlement Agreement shall be governed by the laws of the State of New Mexico except to the extent that it involves bankruptcy matters in which case bankruptcy law shall govern notwithstanding any conflicts of law principles.  Any action to enforce any provisions of this Settlement Agreement shall be brought in the Bankruptcy Court of the District of New Mexico.

7.     The Debtor's Plan, Confirmation Order and Plan Documents are expressly incorporated herein and are made a part of this Settlement Agreement.  In the event of any inconsistencies between the terms of this Settlement Agreement, on the one hand, and any such Plan, Confirmation Order and Plan Documents, on the other hand, the terms of such Plan, Confirmation Order and Plan Documents shall govern.

8.     Each Party expressly acknowledges that nothing in this Settlement Agreement is intended to in any way limit, impair, modify, lessen or alter any provision of the Plan, the Confirmation Order or any Plan Document, including the Personal Injury Trust Declaration and the Personal Injury Trust Note.  Without limiting the generality of the foregoing, on the Effective Date, each provision of the Plan, the Confirmation Order and each Plan Document shall be fully enforceable according to its terms and nothing herein shall impair the effectiveness and binding nature of those provisions.  Any provision of this Settlement Agreement that conflicts with the Plan, the Confirmation Order or the Plan Documents shall not be enforceable and no Party may use any rights set forth in this Settlement Agreement as a defense against or excuse not to perform any obligations under the Plan, the Confirmation Order or any Plan Document.  Further, the Parties acknowledge and agree that, except as set forth in the Plan and the Confirmation Order, on the Effective Date, the Debtor shall be discharged from all claims and causes of action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and all holders of claims (including the Parties hereto) shall be precluded from asserting against the Debtor, its assets, or any property dealt with under the Plan, any further claim or other cause of action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date.

nydocs1-.

9.     This Settlement Agreement shall be binding upon and inure to the benefit of each of the Parties and their respective present or former employees, agents, representatives, general partners, limited partners, divisions, parents, subsidiaries, business units, related entities, principals, third party administrators, affiliates, receivers, insurers, reinsurers, heirs, executors, administrators, associates, upstream entities, downstream entities, directors, officers, attorneys, trustees, assigns, predecessors and successors, related upstream and downstream entities.  This Settlement Agreement supersedes any and all prior or contemporaneous discussions, negotiations, correspondence and/or drafts, except the Term Sheet and Waiver of Defense Conditions attached hereto and the Plan and Confirmation Order, which are material hereto and which are incorporated herein for all purposes.  The Settlement Agreement does not in any way supersede, modify or alter the Plan, the Confirmation Order or the Plan Documents.

10.     Any modification of this Settlement Agreement must be in writing, must specifically refer to this Settlement Agreement and must be signed by a duly-authorized representative of each of the Parties except that the Settlement Agreement cannot be amended to conflict with the Plan, the Confirmation Order or the Plan Documents.

11.     Captions and headings in this Settlement Agreement are employed for convenience of reference only and shall not affect the construction or interpretation of any provision hereof.

12.     Should any part or provision of the Settlement Agreement be held unenforceable or in conflict with the laws of the State of New Mexico, the validity and enforceability of the remaining parts or provisions of the Settlement Agreement shall not be affected by such holding or be interpreted to conflict with the Plan, the Confirmation Order or the Plan Documents..

13.     All requests, communications or notice which any Party wishes to make or deliver to any other Party or which may be required hereunder to be made or delivered by a Party to any other Party shall be in writing and shall be deemed delivered when personally delivered or one day after it is sent by electronic mail or facsimile during regular business hours and deposited or next day delivery with an overnight delivery or mail service such as with Federal Express to any other Party as follows (any Party may change this contact information by a writing delivered in accordance with this paragraph):

        If to the Debtor:

        Otero County Debtor Association, Inc.
        d/b/a Gerald Champion Regional Medical Center
        2669 Scenic Drive
        Alamogordo, New Mexico 88310
        Attn: John D. Wheeler, Esq.

With a copy to:

White & Case LLP
633 W. Fifth Street, Suite 1900
Los Angeles, CA 90071
Attn: Craig H. Averch, Esq.

If to the United Tort Claimants:

Otero County Personal Injury Claims Committee
c/o Barney Given, Esq.
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067

Insert All UTC Counsel

If to Quorum Health Resources, LLC:

Quorum Health Resources, LLC
105 Continental Place
Brentwood, TN 37027
Attn: Mr. Benjamin Huddleson

With a copy to:

Anderson Kill Wood & Bender, P.C.
864 East Santa Clara Street
Ventura, CA  93001
Attn:   David E. Wood

- and -

Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
Attn:  Todd E. Duffy


IN WITNESS WHEREOF, the Parties hereto have duly executed this Settlement Agreement.

DATED: _9/14/12_  QUORUM HEALTH RESOURCES LLC

By: _____
(Signature)

_Ben C Fordham_
(Print Name)

Its: _____
(Title)

DATED: _9/17/12_  CHS/COMMUNITY HEALTH SYSTEMS, INC.

By: _____
(Signature)

RACHEL A. SEIFERT
EXECUTIVE VICE PRESIDENT
(Print Name)

Its: _____
(Title)

DATED: _9/17/2012_  TRIAD HEALTHCARE CORPORATION

By: _____
(Signature)

RACHEL A. SEIFERT
EXECUTIVE VICE PRESIDENT
(Print Name)

Its: _____
(Title)

Case 18-01028-j    Doc 1-1    Filed 05/17/18    Entered 05/17/18 14:43:39 Page 22 of 79

DATED: 9/14/12

COMMUNITY HEALTH SYSTEMS PROFESSIONAL
SERVICE CORPORATION

By: _____
(Signature)

Ben C. Fordham
(Print Name)

Its: V.P & Chief Litigation Counsel
(Title)


DATED: _____

OTERO COUNTY HOSPITAL ASSOCIATION, INC.,
d/b/a GERALD CHAMPION REGIONAL MEDICAL
CETNER, d/b/a MOUNTAIN VIEW CATERING

By: _____
(Signature)

_____
(Print Name)

Its: _____
(Title)

DATED: _____     COMMUNITY HEALTH SYSTEMS PROFESSIONAL
                         SERVICE CORPORATION

                         By: _____
                             (Signature)

                             _____
                             (Print Name)

                         Its: _____
                             (Title)


DATED: *9/18/12*         OTERO COUNTY HOSPITAL ASSOCIATION, INC.,
                         d/b/a GERALD CHAMPION REGIONAL MEDICAL
                         CETNER, d/b/a MOUNTAIN VIEW CATERING

                         By: *Or O Heckert*
                             (Signature)

                             *Robert J Heckert*
                             (Print Name)

                         Its: *Chief Executive Officer*
                             (Title)

nydocs1-.

DATED: _December 4, 2012_   NAUTILUS INSURANCE COMPANY

By: _____
      (Signature)

_Todd D. Hampton_
      (Print Name)

Its: _V.P. CLAIMS_
      (Title)


DATED: _____   CHRISTIAN SCHLICHT

By: _____
      (Signature)

nydocs1-.

DATED: _____  NAUTILUS INSURANCE COMPANY

By: _____
    (Signature)

    _____
    (Print Name)

Its: _____
    (Title)

DATED: OCT 24, 2012 CHRISTIAN SCHLICHT

By: _____
    (Signature)

DATED: 9-20-12      RAY BAILEY

By: _Ray L Bailey_
(Signature)


State of _New Mexico_

County of _Otero_

This instrument was acknowledged before me on the _30th_ day of _September_, 2012 by _Ray Bailey_.

_Joreen Scanlon_      [signature of notarial officer]

_Notary Public_      [title (and rank)]

My commission expires: _November 7, 2013_

```
OFFICIAL SEAL
Joreen Scanlon
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 11-7-2013
```

Seal (if any): _____

nydocs1-.

DATED: 9-20-2012 KAHTLEEN BAILEY

By: _Kathleen E. Bailey_
(Signature)

State of _New Mexico_

County of _Otero_

This instrument was acknowledged before me on the _20th_ day of _September_,
2012 by _Kathleen Bailey_.

_Joreen Scanlon_ [signature of notarial officer]

_Notary Public_ [title (and rank)]

My commission expires: _November 7, 2013_

OFFICIAL SEAL
Joreen Scanlon
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 11-7-2013

Seal (if any): _____

nydocs1-.

Case 18-01028-j    Doc 1-1    Filed 05/17/18    Entered 05/17/18 14:43:39 Page 28 of 79

DATED: _9/24/2012_      LAURIE K. BAKER

By: _Laurie K. Baker_
(Signature)


State of _New Mexico_

County of _Otero_

This instrument was acknowledged before me on the _24th_ day of _Sept_ ,

2012 by _Laurie K. Baker_

_Theda M. Harshey_ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: _____

OFFICIAL SEAL
THEDA M. HARSHEY
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: _8/12/2014_


Seal (if any): _____

DATED: 9/24/2012        RONALD BAKER

By: _____
        (Signature)

State of _____New Mexico_____

County of _____Otero_____

This instrument was acknowledged before me on the 24th day of Sept ,

2012 by Ronald F. Baker

_Theda M. Harshey_ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: _____

OFFICIAL SEAL
THEDA M. HARSHEY
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 8/30/2014

Seal (if any): _____

DATED: 9/17/2012          PHILLIS BARNETT

By: _Phillis Barnett_
         (Signature)


State of __TEXAS__

County of __El Paso__

This instrument was acknowledged before me on the __17__ day of __September__,
2012 by __Phillis Barnett__

_Yolanda Lambrick_ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: __6-4-16__

YOLANDA T. LAMBRICK
Notary Public, State of Texas
My Commission Expires
June 04, 2016

Seal (if any): _____

nydocs1-.

DATED: _9-24-2012_  JANICE BERGERON

By: _Janice Bergeron_
(Signature)

State of _New Mexico_

County of _Lincoln_

This instrument was acknowledged before me on the _24th_ day of _September_, 2012 by _Janice Bergeron_ .

_Jana Lewis_ [signature of notarial officer]

_Assistant Vice President_ [title (and rank)]

My commission expires: _March 16, 2013_

Seal (if any): _____

Page 23 of 143

nydocs1-.

DATED: _9-19-12_      ANN BERRY

By: _Ann Berry_____
      (Signature)


State of _Kentucky_____

County of _Franklin_____

This instrument was acknowledged before me on the _19_ day of _September_

2012 by _Ann Berry_____.

_Renee C Hosler_____ [signature of notarial officer]

_Operations Specialist_____ [title (and rank)]

My commission expires: _2/26/2013_____


Seal (if any): _____

nydocs1-.

Case 18-01028-j    Doc 1-1    Filed 05/17/18    Entered 05/17/18 14:43:39 Page 33 of 79

DATED: 9/17/12     JAMES R. BOREN

                   By: _James Boren_____
                        (Signature)


State of ____Texas_____

County of ____El Paso_____

This instrument was acknowledged before me on the __17__ day of __Sept__,

2012 by ___James Boren_____.

___Yolanda Lambrick_____ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: _____6·4·16_____

```
┌─────────────────────────────────────┐
│        YOLANDA T. LAMBRICK           │
│   Notary Public, State of Texas      │
│      My Commission Expires           │
│         June 04, 2016                │
└─────────────────────────────────────┘
```

Seal (if any): _____

nydocs1-.

Case 18-01028-j    Doc 1-1    Filed 05/17/18    Entered 05/17/18 14:43:39 Page 34 of 79

DATED: 9-21-12          RODNEY BUNSEN

By: _____
          (Signature)

State of _NEW MEXICO_____

County of _LINCOLN_____

This instrument was acknowledged before me on the _21ST_ day of _SEPTEMBER_,

2012 by _GILBERT J. GONZALES_____.

_____ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: _11-16-2015_____

                    ┌─────────────────────────────────┐
                    │         OFFICIAL SEAL           │
                    │      Gilbert J. Gonzales        │
                    │        NOTARY PUBLIC            │
                    │     STATE OF NEW MEXICO         │
Seal (if any): _____│ My Commission Expires: 11-16-2015│_____

Page 27 of 143

nydocs1-.

DATED: 9-21-12  MARTH BUNSEN

By: _Martha Bunsen_
(Signature)

State of _NEW MEXICO_

County of _Lincoln_

This instrument was acknowledged before me on the _21st_ day of _SEPTEMBER_,

2012 by _GILBERT J. Gonzales_ .

_Gill J. Gayle_ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: _11-16-2015_

Seal (if any): _____

OFFICIAL SEAL
Gilbert J. Gonzales
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: _11-16-2015_

nydocs1-.

DATED: _9-17-12_    DAVID L. BURTON

By: _David L. Burton_
    (Signature)

State of _Texas_

County of _El Paso_

This instrument was acknowledged before me on the _17_ day of _Sept_,
2012 by _David Burton_.

_Yolanda Lambrick_ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: _6-4-16_

```
YOLANDA T. LAMBRICK
Notary Public, State of Texas
My Commission Expires
June 04, 2016
```

Seal (if any): _____

nydocs1-.

DATED: *9-18-12*        HELEN BURTON

By: *Helen L. Burton*
        (Signature)

State of _____*Texas*_____

County of _____*El Paso*_____

This instrument was acknowledged before me on the _*18*_ day of _*Sept*_,
2012 by _*Helen L. Burton*_.

*Yolanda Lambrick*_____ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: _____*6-4-16*_____

YOLANDA T. LAMBRICK
Notary Public, State of Texas
My Commission Expires
June 04, 2016

Seal (if any): _____

nydocs1-.

DATED: _9/20/12_    MARY JANE CALLAWAY

By: _Mary Jane Callaway_
(Signature)

State of _New Mexico_

County of _Otero_

This instrument was acknowledged before me on the _20th_ day of _September_, 2012 by _Mary Jane Callaway_

_Joreen Scanlon_ [signature of notarial officer]

_Notary Public_ [title (and rank)]

My commission expires: _November 7, 2013_

```
OFFICIAL SEAL
Joreen Scanlon
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 11-7-2013
```

Seal (if any): _____

Page 31 of 143

nydocs1-.

DATED: _9/20/12_  ROBERT CALLAWAY

By: _Robert L. Callaway_ (Signature)

State of _New Mexico_

County of _Otero_

This instrument was acknowledged before me on the _20th_ day of _September_, 2012 by _Robert Callaway_.

_Joreen Scanlon_ [signature of notarial officer]

_Notary Public_ [title (and rank)]

My commission expires: _November 7, 2013_

**OFFICIAL SEAL**
**Joreen Scanlon**
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: _11-7-2013_

Seal (if any): _____

nydocs1-.

DATED: *9-18-12*                EDNA O. CHAVEZ

By: *Edna O. Chavez*
       (Signature)


State of _Texas_

County of _El Paso_

This instrument was acknowledged before me on the _18_ day of _Sept_,
2012 by _Edna D Chavez_.

*Yolanda Lambrick* _____ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: _6-4-16_

> YOLANDA T. LAMBRICK
> Notary Public, State of Texas
> My Commission Expires
> June 04, 2016

Seal (if any): _____

DATED: 9-18-12          JOHN I. CHAVEZ

                        By: _John I Chavez_____
                            (Signature)


State of ___Texas_____

County of ___El Paso_____

This instrument was acknowledged before me on the _18_ day of _Sept_,

2012 by __John Chavez_____.

_Yolanda Lambrick_____ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: ___6-4-16_____

```
┌─────────────────────────────────────┐
│  ★   YOLANDA T. LAMBRICK            │
│      Notary Public, State of Texas   │
│      My Commission Expires           │
│      June 04, 2016                   │
└─────────────────────────────────────┘
```

Seal (if any): _____

DATED: 9-18-12

TONY S. CHAVEZ

By: _Tony Chavez_
(Signature)

State of _Texas_

County of _El Paso_

This instrument was acknowledged before me on the _18_ day of _Sept_,

2012 by _Tony Chavez_.

_Yolanda Lambrick_ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: _6-4-16_

YOLANDA T. LAMBRICK
Notary Public, State of Texas
My Commission Expires
June 04, 2016

Seal (if any): _____

DATED: 9-18-12          RITA CHAVEZ

                        By: *Rita Chavez*
                            (Signature)


State of Texas

County of El Paso

This instrument was acknowledged before me on the 18 day of Sept,

2012 by Rita Chavez.

*Yolanda Lambrick* [signature of notarial officer]

_____ [title (and rank)]


My commission expires: 6-4-16

```
+-------------------------------------+
|        YOLANDA T. LAMBRICK          |
|     Notary Public, State of Texas   |
|        My Commission Expires        |
|           June 04, 2016             |
+-------------------------------------+
```

Seal (if any): _____



Page 38 of 143

nydocs1-.

DATED: 9-18-12          MARIA NORA COYAZO

By: *Maria Nora Coyazo*
   (Signature)

State of  Texas

County of  El Paso

This instrument was acknowledged before me on the 18 day of Sept,

2012 by *Maria Nora Coyazo.*

*Yolanda Lambrick*          [signature of notarial officer]

_____  [title (and rank)]

My commission expires:  6·4-16

```
    ★   YOLANDA T. LAMBRICK
        Notary Public, State of Texas
        My Commission Expires
        June 04, 2016
```

Seal (if any): _____

nydocs1-.

DATED: _9-19-12_       THERESA CRAWFORD

By: _Theresa Crawford_
       (Signature)

State of _New Mexico_

County of _Dona Ana_

This instrument was acknowledged before me on the _19th_ day of _September_

2012 by _Theresa Crawford_.

_Krista Ross_                    [signature of notarial officer]

_Notary_                              [title (and rank)]

My commission expires: _12-5-2013_

(Seal (if any))

nydocs1-.

Case 18-01028-j    Doc 1-1    Filed 05/17/18    Entered 05/17/18 14:43:39 Page 46 of 79

DATED: 9-19-2012  CLARENCE CRAWFORD

By: _____ Clarence Woodrow Crawford Sr

(Signature)

State of New Mexico _____

County of Dona Ana _____

This instrument was acknowledged before me on the 19th day of September

2012 by Clarence Crawford

_____ Krista Ross _____ [signature of notarial officer]

_____ Notary _____ [title (and rank)]

My commission expires: 12-5-2013 _____



Seal (if any): _____

nydocs1-.

DATED: 9/18/17     JAMES CROSS

By: _James Cross_____

(Signature)

State of __Texas_____

County of __El Paso_____

This instrument was acknowledged before me on the 18 day of Sept ,

2012 by __James Cross_____.

_Yolanda Lambrick_____ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: ____6·4-16_____

YOLANDA T. LAMBRICK
Notary Public, State of Texas
My Commission Expires
June 04, 2016

Seal (if any): _____

nydocs1-.

DATED: *9-18-2012* WANDA CROSS

By: *Wanda Cross*
        (Signature)

State of ___*Texas*___

County of ___*El Paso*___

This instrument was acknowledged before me on the _18_ day of _*Sept*_,

2012 by _*Wanda Cross*_.

_*Yolanda Lambrick*_ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: ___*6-4-16*___

YOLANDA T. LAMBRICK
Notary Public, State of Texas
My Commission Expires
June 04, 2016

Seal (if any): _____

DATED: _9-21-12_ JOEL CROSSNO

By: _Joel M Crossno_

(Signature)


State of _New Mexico_

County of _Lincoln_

This instrument was acknowledged before me on the _21_ day of _September_, 2012 by _Joel M. Crossno_.

_Debra Matthies_ [signature of notarial officer]

_Loan Officer_ [title (and rank)]

My commission expires: _10-10-2012_

OFFICIAL SEAL
DEBRA MATTHIES
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: _10-10-2012_

Seal (if any): _____

nydocs1-.

Case 18-01028-j    Doc 1-1    Filed 05/17/18    Entered 05/17/18 14:43:39 Page 50 of 79

DATED: _9-21-12_    VIVIAN CROSSNO

By: _Vivian L Crossno_
(Signature)

State of _NEW MEXICO_

County of _LINCOLN_

This instrument was acknowledged before me on the _21_ day of _September_, 2012 by _Vivian L. Crossno_ .

_Debra Matthies_ [signature of notarial officer]

_Loan Officer_ [title (and rank)]

My commission expires: _10-10-2012_

OFFICIAL SEAL
DEBRA MATTHIES
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: _10-10-2012_

Seal (if any): _____

nydocs1-.

Case 18-01028-j    Doc 1-1    Filed 05/17/18    Entered 05/17/18 14:43:39 Page 51 of 79

DATED: *Sept 19, 2012*     MARJORIE CURTIS

By: *Marjorie Curtis*
(Signature)


State of _____ Colorado _____

County of _____ Montrose _____

This instrument was acknowledged before me on the __19th__ day of __September__,

2012 by _____ Marjorie Curtis _____.

_____ [signature of notarial officer]

_Colorado State Notary Public_ [title (and rank)]

My commission expires: __7/1/2015__

Seal (if any): _____

nydocs1-.

DATED: _9-21-12_   APRIL DOUTHITT-DUGGER

By: _April Douthitt Dugger_
(Signature)

State of _SI New Mexico_

County of _Bernalillo_

This instrument was acknowledged before me on the _21st_ day of _September_

2012 by _April Douthitt Dugger_

_Pauline Guillen Montano_ [signature of notarial officer]

_Notary Public_ [title (and rank)]

My commission expires: _1-3-2013_

```
OFFICIAL SEAL
Pauline Guillen-Montano
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires 1-3-2013
```

Seal (if any): _____

nydocs1-.

DATED: 9-21-12

CHARLES B. DUGGER III

By: _Charles B Dugger III_ (Signature)

State of _New Mexico_

County of _Bernalillo_

This instrument was acknowledged before me on the _21st_ day of _September_, 2012 by _Charles B. Dugger III_

_Joreen Scanlon_ [signature of notarial officer]

_Notary Public_ [title (and rank)]

My commission expires: _November 7, 2013_

OFFICIAL SEAL
Joreen Scanlon
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 11-7-2013

Seal (if any): _____

Page 49 of 143

nydocs1-.

DATED: 9-18-12          LAVINE M. DURDEN

By: _Lave M. D_____
   (Signature)


State of _Texas_____

County of _El Paso_____

This instrument was acknowledged before me on the __18__ day of _Sept_,

2012 by _Lavine M Durden_.

_Yolanda Lambrick_____ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: __6-4-16_____

```
YOLANDA T. LAMBRICK
Notary Public, State of Texas
My Commission Expires
June 04, 2016
```

Seal (if any): _____

DATED: _9/24/12_       CYNTHIA FENDER

By: _Cynthia Fender_
    (Signature)


State of _New Mexico_

County of _Dona Ana_

This instrument was acknowledged before me on the _24_ day of _September_
2012 by _Cynthia R Fender_

_____ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: _08/13/2016_

Seal (if any): _____

OFFICIAL SEAL
JAIME PEREZ
NOTARY PUBLIC - STATE OF NEW MEXICO
My commission expires 08/13/2016

nydocs1-.

DATED: 9/24/12      JAMES FENDER

By: _James R Fend_____
    (Signature)

State of _New Mexico_____

County of _Otero_____

This instrument was acknowledged before me on the _24_ day of _September_, 2012 by _Belinda Matheny_.

_Belinda Matheny_____ [signature of notarial officer]

_Notary_____ [title (and rank)]

My commission expires: _August 21, 2016_____

Seal (if any): _____

nydocs1-.

DATED: _9-24-2012_  JUDY ANN FERGUSON

By: _Judy Ann Ferguson_
      (Signature)

State of _New Mexico_

County of _Otero_

This instrument was acknowledged before me on the _24th_ day of _September_, 2012 by _Judy A Ferguson_.

_Elizabeth L Chaz_ [signature of notarial officer]

_Banker_ [title (and rank)]

My commission expires: _6/24/14_

Seal (if any):

nydocs1-.

Case 18-01028-j    Doc 1-1    Filed 05/17/18    Entered 05/17/18 14:43:39 Page 58 of 79

DATED: 9/24/12     OTIS FERGUSON

By: _____
    (Signature)


State of _New mexico_____

County of _OT-fro_____

This instrument was acknowledged before me on the 24th day of September,
2012 by OTIS Ferguson_____.

_Elizabeth L Chg_____ [signature of notarial officer]

_____Banker_____ [title (and rank)]

My commission expires: _6/24/14_____

_____
Seal (if any)

nydocs1-.

DATED: 9/18/2012 DALE FOX

By: _Dale Fox_____
   (Signature)

State of ___Texas_____

County of ___El Paso_____

This instrument was acknowledged before me on the __18__ day of __Sept__,
2012 by ___Dale Fox_____.

_Yolanda Lambrick_____ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: ___6-4-16_____

```
YOLANDA T. LAMBRICK
Notary Public, State of Texas
My Commission Expires
June 04, 2016
```

Seal (if any): _____

DATED: 9-18-2012     PHYLLIS FOX

By: _Phyllis Fox_____
   (Signature)


State of _Texas_____

County of _El Paso_____

This instrument was acknowledged before me on the _18_ day of _Sept_____,

2012 by _Phyllis Fox_____.

_Yolanda Lambrick_____     [signature of notarial officer]

_____     [title (and rank)]


My commission expires: _____6-4-16_____

YOLANDA T. LAMBRICK
Notary Public, State of Texas
My Commission Expires
June 04, 2016

Seal (if any): _____

This Settlement Agreement shall not in any way be construed to release any claims Mickie Francis may have against Frank Bryant M.D. or Southwest Orthopedics, P.C.

DATED: _9-24-12_

MICKIE FRANCIS

By: _Mickie Francis_
     (Signature)

State of _New Mexico_

County of _Otero_

This instrument was acknowledged before me on the _24_ day of _September_ 2012 by _Mickie Francis_.

_Catina M. Carpenter_ [signature of notarial officer]

_Commercial Loan Admin_ [title (and rank)]
_BANK '34_

My commission expires: _10 - 6 - 2015_

> OFFICIAL SEAL
> CATINA M. CARPENTER
> NOTARY PUBLIC    STATE OF NEW MEXICO
> My commission expires _10/6/2015_

Seal (if any): _____

nydocs1-.

Case 18-01028-j    Doc 1-1    Filed 05/17/18    Entered 05/17/18 14:43:39 Page 62 of 79

DATED: 9-18-12          DARRELL GILMORE

                        By: _____
                             (Signature)


State of ___Texas_____

County of ___El Paso_____

This instrument was acknowledged before me on the 18 day of Sept,

2012 by ___Darrell Gillmore___.

___Yolanda Lambrick_____ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: ___6-4-16_____

```
        YOLANDA T. LAMBRICK
       Notary Public, State of Texas
        My Commission Expires
          June 04, 2016
```

Seal (if any): _____

DATED: 9-18-12          SUSAN GILMORE

By: _Susan Gilmore_____
    (Signature)

State of _Texas_____

County of _El Paso_____

This instrument was acknowledged before me on the _18_ day of _Sept_,

2012 by _Susan Gillmore_.

_Yolanda Lambrick_____ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: _6-4-16_____

```
YOLANDA T. LAMBRICK
Notary Public, State of Texas
My Commission Expires
June 04, 2016
```

Seal (if any): _____

nydocs1-.

DATED: 9-17-12          FRANK GUERRERO

                        By: Frank Guerrero
                            (Signature)


State of Texas

County of El Paso

This instrument was acknowledged before me on the 17 day of Sept,

2012 by Frank Guerrero.

Yolanda Lambrick          [signature of notarial officer]

_____ [title (and rank)]

My commission expires: 6-4-16

                        ┌─────────────────────────────────┐
                        │  ★   YOLANDA T. LAMBRICK         │
                        │      Notary Public, State of Texas│
                        │      My Commission Expires        │
                        │      June 04, 2016                │
                        └─────────────────────────────────┘

Seal (if any): _____

nydocs1-.

DATED: _9-17-2012_ KENT L. GWYNNE

By: _Dr._____

(Signature)

State of _Arizona_

County of _Mohave_

This instrument was acknowledged before me on the _17_ day of _September_
2012 by _Robin Hoffman_ .

_____ [signature of notarial officer]

_Notary Public_____ [title (and rank)]

My commission expires: _8-6-2013_

OFFICIAL SEAL
ROBIN HOFFMAN
NOTARY PUBLIC - State of Arizona
MOHAVE COUNTY
My Comm. Expires Aug. 6, 2013

Seal (if any): _____

Page 61 of 143

nydocs1-.

DATED: 9-17-2012    ELIZABETH GWYNNE

By: _D Gynne_
    (Signature)


State of _Arizona_

County of _Mohave_

This instrument was acknowledged before me on the _17th_ day of _September_
2012 by _Robin Hoffman_.

_Robin Her_____ [signature of notarial officer]

_Notary Public_____ [title (and rank)]

My commission expires: _8-6-2013_


OFFICIAL SEAL
ROBIN HOFFMAN
NOTARY PUBLIC - State of Arizona
MOHAVE COUNTY
My Comm. Expires Aug. 6, 2013

Seal (if any): _____

nydocs1-.

DATED: 9-20-2012      ESTATE OF ALONZO A. HALL

By: _Melanie J. Hall as personal representative_
     (Signature)


State of _New Mexico_

County of _Otero_

This instrument was acknowledged before me on the _20th_ day of _September_,
2012 by _Melanie Hall_ .

_Joreen Scanlon_ _____ [signature of notarial officer]

_Notary Public_ _____ [title (and rank)]

My commission expires: _November 7, 2013_ _____

OFFICIAL SEAL
Joreen Scanlon
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 11-7-2013

Seal (if any): _____

Page 63 of 143

nydocs1-.

DATED: 9-17-12          MELA HERRERA

By: Mela Herrera
     (Signature)

State of ___Texas_____

County of ___El Paso_____

This instrument was acknowledged before me on the ___17___ day of ___Sept___,
2012 by ___Mela Herrera___.

Yolanda Lambrick _____ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: ___6-4-16_____

> YOLANDA T. LAMBRICK
> Notary Public, State of Texas
> My Commission Expires
> June 04, 2016

Seal (if any): _____

DATED: _9-17-12_     JAKE HERRERA

By: _____
(Signature)

State of _Texas_____

County of _El Paso_____

This instrument was acknowledged before me on the _17_ day of _Sept_,
2012 by _Jake Herrera_.

_Yolanda Lambrick_     [signature of notarial officer]

_____ [title (and rank)]

My commission expires: _6-4-16_____

YOLANDA T. LAMBRICK
Notary Public, State of Texas
My Commission Expires
June 04, 2016

Seal (if any): _____

nydocs1-.

DATED: 9/21/2012                    LINDA HOEFLER

                    By: _Linda Hoefler_____
                            (Signature)

State of _NM_____

County of _Otero_____

This instrument was acknowledged before me on the 21 day of September
2012 by _Linda L Hoefler_.

_Natalie Herrera_____ [signature of notarial officer]
_Notary Public_____ [title (and rank)]

My commission expires: _7/20/2013_____

Seal (if any): _____



OFFICIAL SEAL
NATALIE HERRERA
NOTARY PUBLIC - STATE OF NEW MEXICO
My Commission Expires: 7/20/2013

DATED: *SEP 18 2012* PAUL HOUSTON

By: _(signature)_

(Signature)

State of _Texas_

County of _El Paso_

This instrument was acknowledged before me on the _18_ day of _Sept_,
2012 by _Paul Houston_.

_Yolanda Lambrick_ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: _6·4-16_

```
YOLANDA T. LAMBRICK
Notary Public, State of Texas
My Commission Expires
June 04, 2016
```

Seal (if any): _____

DATED: *9-18-2012* SHIRLEY HUEBERT

By: *Shirley Huebert*
(Signature)

State of **Texas**

County of **EL Paso**

This instrument was acknowledged before me on the **18** day of **Sept**, 2012 by **Shirley Huebert**.

*Yolanda Lambrick* [signature of notarial officer]

_____ [title (and rank)]

My commission expires: **6-4-16**

YOLANDA T. LAMBRICK
Notary Public, State of Texas
My Commission Expires
June 04, 2016

Seal (if any): _____

DATED: 9-20-12          LORRAINE HUTCHINGS

                        By: _Lorraine Hutchings_____
                            (Signature)


State of _New Mexico_____

County of _Otero_____

This instrument was acknowledged before me on the _20th_ day of _September_,
2012 by _Lorraine Hutchings_.

_Joreen Scanlon_____ [signature of notarial officer]

_Notary Public_____ [title (and rank)]

My commission expires: _November 7, 2013_____

```
            ┌─────────────────────────────┐
            │        OFFICIAL SEAL        │
            │       Joreen Scanlon        │
            │       NOTARY PUBLIC         │
            │    STATE OF NEW MEXICO      │
            │ My Commission Expires: 11-7-2013 │
            └─────────────────────────────┘
```

Seal (if any): _____

nydocs1-.

DATED: *9-17-12*     IVAN JACKSON

By: _Ivan Jackson_____
(Signature)


State of _Texas_____

County of _El Paso_____

This instrument was acknowledged before me on the _17_ day of _Sept_,

2012 by _Ivan Jackson_____.

_Yolanda Lambrick_____ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: _6·4-16_____

YOLANDA T. LAMBRICK
Notary Public, State of Texas
My Commission Expires
June 04, 2016

Seal (if any): _____

DATED: _9-18-12_    NANCY JONSSON

By: _Nancy L. Jonsson_
      (Signature)


State of _Texas_

County of _El Paso_

This instrument was acknowledged before me on the _18_ day of _Sept_,
2012 by _Nancy L Jonsson_.

_Yolanda Lambrick_____ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: _6·4-16_____

```
*********************************
*  ★  YOLANDA T. LAMBRICK        *
*      Notary Public, State of Texas *
*      My Commission Expires     *
*         June 04, 2016          *
*********************************
```

Seal (if any): _____

DATED: 9-18-12          ANABELLE SIM LINDLEY

                        By: _Annabelle Sim Lindley_
                            (Signature)



State of _Texas_

County of _EL Paso_

This instrument was acknowledged before me on the _18_ day of _Sept_,

2012 by _Annabelle Lindley_.

_Yolanda Lambrick_          [signature of notarial officer]

_____ [title (and rank)]

My commission expires: _6-4-16_

                    ┌─────────────────────────────┐
                    │    YOLANDA T. LAMBRICK        │
                    │  Notary Public, State of Texas│
                    │    My Commission Expires      │
                    │       June 04, 2016           │
                    └─────────────────────────────┘

Seal (if any): _____

DATED: 9-18-12

JEARL LINDLEY

By: _____ (Signature)

State of ___Texas___

County of ___El Paso___

This instrument was acknowledged before me on the __18__ day of __Sept__,

2012 by ___Jearl R Lindley___.

_Yolanda Lambrick_ _____ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: ___6·4·16___

YOLANDA T. LAMBRICK
Notary Public, State of Texas
My Commission Expires
June 04, 2016

Seal (if any): _____

DATED: 9-28-2012        PETER LUNA, individually, and as Parent and Next Friend of
                        minor children, MAKAYLA LUNA and MARIA LUNA

                        By: _____
                            (Signature)


State of _New Mexico_____

County of _Otero_____


This instrument was acknowledged before me on the __28__ day of _September_

2012 by _Valeria L. Hurt_____.

_Valeria L. Hurt_____ [signature of notarial officer]

_____ [title (and rank)]

My commission expires: _27Oct15_____

OFFICIAL SEAL
VALERIA L. HURT
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 27Oct15

Seal (if any): _____